AF Approval TK for SCN                                        Chief Approval ______

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA

v.                                        CASE NO. 2:23-cr-24-TPB-KCD

BRITTANY LUKASIK

# PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by Roger B. Handberg, United States Attorney for the Middle District of Florida, and the defendant, Brittany Lukasik, and the attorney for the defendant, Douglas Molloy, mutually agree as follows:

## A. Particularized Terms

### 1. Count(s) Pleading To

The defendant shall enter a plea of guilty to Counts One and Two of the Information. Count One charges the defendant with Conspiracy to Commit Wire Fraud, in violation of 18 U.S.C. § 1349. Count Two charges the defendant with Filing a False Tax Return, in violation of 26 U.S.C. § 7206(1).

### 2. Maximum Penalties

Count One carries a maximum sentence of twenty years imprisonment, a fine of up to $250,000, or twice the gross gain caused by the

offense, or twice the gross loss caused by the offense, whichever is greater, a term of supervised release of not more than three years, and a special assessment of $100.

Count Two carries a maximum sentence of three years imprisonment, a fine of up to $250,000, a term of supervised release of not more than three years, and a special assessment of $100.

With respect to certain offenses, the Court shall order the defendant to make restitution to any victim of the offense, and with respect to other offenses, the Court may order the defendant to make restitution to any victim of the offense, or to the community, as set forth below.

3. Elements of the Offense(s)

The defendant acknowledges understanding the nature and elements of the offense(s) with which defendant has been charged and to which defendant is pleading guilty.

The elements of Count One, which charges Conspiracy to Commit Wire Fraud in violation of 18 U.S.C. § 1349, are:

First: Two or more persons, in some way or manner, agreed to try to accomplish a common and unlawful plan to commit wire fraud, as charged in the information; and

Second: The defendant knew the unlawful purpose of the plan and willfully joined in it.

The elements of Count Two, which charges Filing a False Tax Return, in violation of 26 U.S.C. § 7206(1), are:

First: the defendant made and subscribed a return, statement, or other document which was false as to a material matter;

Second: which contained a written declaration that it was made under penalty of perjury;

Third: the defendant did not believe the return to be true and correct as to every material matter; and

Fourth: the defendant signed the return willfully and with the specific intent to violate the law.

4. Indictment Waiver

Defendant will waive the right to be charged by way of indictment before a federal grand jury.

5. No Further Charges

If the Court accepts this plea agreement, the United States Attorney's Office for the Middle District of Florida agrees not to charge defendant with committing any other federal criminal offenses known to the United States Attorney's Office at the time of the execution of this agreement, related to the conduct giving rise to this plea agreement.

6. Mandatory Restitution to Victim of Offense of Conviction

Pursuant to 18 U.S.C. § 3663A(a) and (b), defendant agrees to make full restitution to T.H.

7. Guidelines Sentence

Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States will recommend to the Court that the defendant be sentenced within the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines, as adjusted by any departure the United States has agreed to recommend in this plea agreement. The parties understand that such a recommendation is not binding on the Court and that, if it is not accepted by this Court, neither the United States nor the defendant will be allowed to withdraw from the plea agreement, and the defendant will not be allowed to withdraw from the plea of guilty.

8. Acceptance of Responsibility - Three Levels

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will recommend to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG § 3E1.1(a). The defendant understands that this recommendation or

request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG § 3E1.1(b) and all terms of this Plea Agreement, including but not limited to, the timely submission of the financial affidavit referenced in Paragraph B.5., the United States agrees to file a motion pursuant to USSG § 3E1.1(b) for a downward adjustment of one additional level. The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

9. Forfeiture of Assets

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), whether in the possession or control of the United States, the defendant, or

defendant's nominees. The assets to be forfeited specifically include, but are not limited to, the following:

a. the $542,760.23 in proceeds the defendant admits she jointly obtained with her co-conspirator, Diane Durbon, as the result of the commission of the offense to which the defendant is pleading guilty;

b. a 2016 Nissan Rogue (VIN: JN8AT2MTXGW007917);

c. a 2020 Kia Sorento (VIN: 5XYPG4A36LG669592); and

d. real property located at 544/546 SE 5th Ave, Cape Coral, Florida 33990,

which assets were purchased or funded with proceeds of the offenses to which the defendant is to plead guilty. The net proceeds from the forfeiture and sale of any specific assets will be credited to and reduce the amount the United States shall be entitled to forfeit as substitute assets pursuant to 21 U.S.C. § 853(p).

The defendant acknowledges and agrees that (1) the defendant jointly obtained approximately $542,760.23 as a result of the commission of the offenses and (2) as a result of the acts and omissions of the defendant and her co-conspirator, the proceeds not recovered by the United States through the forfeiture of the directly traceable assets listed herein have been transferred to third parties and cannot be located by the United States upon the exercise of due diligence. Therefore, the defendant agrees that, pursuant to 21 U.S.C. §

853(p), the United States is entitled to forfeit any other property of the defendant (substitute assets), up to the amount of proceeds the defendant obtained, as the result of the offenses of conviction and, further, the defendant consents to, and agrees not to oppose, any motion for substitute assets filed by the United States up to the amount of proceeds obtained from commission of the offense and consents to the entry of the forfeiture order into the Treasury Offset Program. The defendant will be held jointly and severally liable for the $542,760.23 with co-defendant Diane Durbon.

The defendant additionally agrees that since the criminal proceeds have been transferred to third parties and cannot be located by the United States upon the exercise of due diligence, the preliminary and final orders of forfeiture should authorize the United States Attorney's Office to conduct discovery (including depositions, interrogatories, requests for production of documents, and the issuance of subpoenas), pursuant to Rule 32.2(b)(3) of the Federal Rules of Criminal Procedure, to help identify, locate, and forfeit substitute assets.

The defendant agrees that forfeiture of substitute assets as authorized herein shall not be deemed an alteration of the defendant's sentence and the United States shall not be limited to the forfeiture of the substitute assets, if any, specifically listed in this plea agreement.

The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil, judicial or administrative forfeiture action. The defendant also agrees to waive all constitutional, statutory and procedural challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture described herein constitutes an excessive fine, was not properly noticed in the charging instrument, addressed by the Court at the time of the guilty plea, announced at sentencing, or incorporated into the judgment.

The defendant admits and agrees that the conduct described in the Factual Basis below provides a sufficient factual and statutory basis for the forfeiture of the property sought by the government. Pursuant to Rule 32.2(b)(4), the defendant agrees that the preliminary order of forfeiture will satisfy the notice requirement and will be final as to the defendant at the time it is entered. In the event the forfeiture is omitted from the judgment, the defendant agrees that the forfeiture order may be incorporated into the written judgment at any time pursuant to Rule 36.

The defendant agrees to take all steps necessary to identify and locate all property subject to forfeiture (including substitute assets) and to transfer custody of such property to the United States before the defendant's

sentencing. To that end, the defendant agrees to make a full and complete disclosure of all assets over which defendant exercises control, including all assets held by nominees, to execute any documents requested by the United States to obtain from any other parties by lawful means any records of assets owned by the defendant, and to consent to the release of the defendant's tax returns for the previous five years. The defendant agrees to be interviewed by the government, prior to and after sentencing, regarding such assets and their connection to criminal conduct. The defendant further agrees to be polygraphed on the issue of assets, if it is deemed necessary by the United States. The defendant agrees that Federal Rule of Criminal Procedure 11 and USSG § 1B1.8 will not protect from forfeiture assets disclosed by the defendant as part of the defendant's cooperation.

The defendant agrees to take all steps necessary to assist the government in obtaining clear title to the forfeitable assets before the defendant's sentencing. In addition to providing full and complete information about forfeitable assets, these steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers.

The defendant agrees that, in the event the Court determines that the defendant has breached this section of the Plea Agreement, the defendant

may be found ineligible for a reduction in the Guidelines calculation for acceptance of responsibility and substantial assistance, and may be eligible for an obstruction of justice enhancement.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture.

The defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive the defendant, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement. The forfeitability of any particular property pursuant to this agreement shall be determined as if the defendant had survived, and that determination shall be binding upon defendant's heirs, successors and assigns until the agreed forfeiture, including the forfeiture of any substitute assets, is final.

**B. <u>Standard Terms and Conditions</u>**

1. <u>Restitution, Special Assessment and Fine</u>

The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, <u>shall</u> order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant

to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement. The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for collecting restitution (28 U.S.C. § 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to the Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied.

On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013. To ensure that this obligation is satisfied, the Defendant agrees to deliver a cashier's check, certified check or money order to the Clerk of the Court in the amount of $100.00, payable to "Clerk, U.S. District Court" within ten days of the change of plea hearing.

The defendant understands that this agreement imposes no limitation as to fine.

2. Supervised Release

The defendant understands that the offense(s) to which the defendant is pleading provide(s) for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

3. Immigration Consequences of Pleading Guilty

The defendant has been advised and understands that, upon conviction, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

4. Sentencing Information

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the count(s) to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to

make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

5. Financial Disclosures

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United States Attorney's Office within 30 days of execution of this agreement an affidavit reflecting the defendant's financial condition. The defendant promises that her financial statement and disclosures will be complete, accurate and truthful and will include all assets in which she has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, dependent, nominee or other third party. The defendant further agrees to execute any documents requested by the United States needed to obtain from any third parties any records of assets owned by the defendant, directly or through a nominee, and, by the execution of this Plea Agreement, consents to the release of the defendant's tax returns for the previous five years. The defendant similarly agrees and authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to

the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court. The defendant expressly authorizes the United States Attorney's Office to obtain current credit reports in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

6. Sentencing Recommendations

It is understood by the parties that the Court is neither a party to nor bound by this agreement. The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office. The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office. Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement. The government expressly reserves the right to support and defend any decision that the Court may make

with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

7. Defendant's Waiver of Right to Appeal the Sentence

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

8. Middle District of Florida Agreement

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this

office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

9. Filing of Agreement

This agreement shall be presented to the Court, in open court or in camera, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

10. Voluntariness

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any). The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront

and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement. The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

11. Factual Basis

Defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set forth below are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

## FACTS

Beginning in or about 2016, the defendant, Brittany Lukasik, and her mother and co-conspirator, Diane Durbon, were hired to be caretakers for T.H., the victim. At the time Lukasik and Durbon were hired, T.H. was 92 years of age and needed caretaking assistance due to the onset of dementia. Lukasik and Durbon were hired by T.H.'s niece, S.R., and were paid $2,400 a month total. Lukasik, who would become a registered nurse, and Durbon, were expected to visit with T.H. daily at her residence in North Fort Myers to ensure T.H. had eaten and to provide T.H. with social interaction.

In October 2017, Durbon began to unlawfully access an investment account T.H. held at Vanguard. To unlawfully access the account, Durbon would place a phone call to Vanguard and speak with a Vanguard account representative while in the Middle District of Florida. Each phone call to Vanguard was an interstate wire communication because Vanguard's call centers were located outside of the State of Florida. To gain access to T.H.'s account and information, Durbon would place T.H. on the phone to answer various account security questions, including what her account number, date of birth, social security number, and mailing address were.

A review of interior surveillance video footage from cameras Durbon had installed inside of T.H.'s home showed Durbon putting a script

that contained the answers to the Vanguard security questions in front of T.H. before and during each phone call. Additionally, before some of the calls, Durbon was captured on surveillance pointing to different portions of the script to prepare T.H. for the call.

After being given authorization to speak to Vanguard on T.H.'s behalf, Durbon would move funds from T.H.'s investment accounts into a Prime Money Market Account (PMMA) that also functioned as a checking account. Durbon would also order more checks and made misrepresentations to Vanguard representatives that T.H. did not like to be out checks. All the while, checks were being issued from the Vanguard PMMA account to Lukasik in amounts ranging from $1,000 to $9,600.

Between November 2017 and July 2019, approximately $231,659 in checks were issued to Lukasik from T.H.'s Vanguard PMMA account. The checks were deposited into Lukasik's Bank of America account ending in -2522 ("BOA account ending in -2522") and her Suncoast Credit Union account ending in -5919 ("SCU account ending in -5919"). Lukasik was the sole signatory on both accounts.

Beginning in or around November 2018, Durbon began to unlawfully access T.H.'s TransAmerica annuity policy. Between November 2018 and February 2019, Durbon made 11 phone calls to TransAmerica (6

were made to TransAmerica representatives located outside of the state of Florida) for the purpose of surrendering and cashing out T.H.'s annuity policy. To gain access to T.H.'s policy information, Durbon would place T.H. on the phone to answer various account security questions, including what her name, date of birth, and social security number were. Video surveillance footage from inside T.H.'s home also captured Durbon placing a script that contained the answers to the security questions in front of T.H. before and during the calls. Durbon would also make different misrepresentations to TransAmerica to gain access to and cash out T.H.'s annuity policy. For instance, when asked her relationship to the policy holder, Durbon falsely stated that T.H. was her aunt.

In January 2019, Durbon faxed a fraudulent Annuity Withdrawal Form, as well as a letter that purported to have been written by T.H., to TransAmerica. After a review of the Annuity Withdrawal Form, TransAmerica approved the request and issued a check to T.H. in the amount of $244,521.09. The check was deposited into one of T.H.'s checking accounts at Wells Fargo Bank ("WF"). After the check was deposited, approximately 92 checks, totaling $372,092.98, were issued to Lukasik from the account between February 2019 and March 2020. The checks were deposited into Lukasik's BOA account ending in -2522 and SCU account ending in -5919.

ATM surveillance captured Lukasik and Durbon making the deposits into Lukasik's account. In one of the ATM surveillance videos, Lukasik and Durbon can be seen writing a check from what appeared to be T.H.'s WF checkbook.

In total, approximately $542,760.23 in fraudulently obtained funds were deposited into Lukasik's accounts between January 2018 and March 2020. After the funds were deposited, Lukasik and Durbon used the funds to pay off debt and make a variety of purchases. In February 2019, Lukasik used the funds to issue a $26,354.05 check for the purchase of a 2018 Nissan Rogue for Durbon. Lukasik also used $17,735.17 of T.H.'s money to pay off the car loan on her 2016 Nissan Rogue. Further, Lukasik used fraudulently obtained proceeds to pay off more than $29,000 in student loan debt, and to make more than $100,000 in credit card payments. T.H.'s money was also used by Lukasik to purchase a duplex located at 544/546 SE 5th Ave, Cape Coral, Florida, and more than $100,000 of the fraudulently obtained proceeds were used to buy electronics, furniture, and remodel the duplex.

In 2019, Lukasik deposited $477,283 in checks into bank accounts that she controlled. On April 15, 2020, Lukasik filed a 2019 U.S. Individual Income Tax Return that falsely reported her total income for 2019 as $58,805. Lukasik failed to report all of the money she had fraudulently

taken from T.H. during 2019 which was reportable as income to the Internal Revenue Service. The income tax return contained a declaration that the document or form signed under penalties of perjury.

12. Entire Agreement

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

13. Certification

The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

DATED this 21 day of February, 2023.

ROGER B. HANDBERG
United States Attorney

Brittany Lukasik
Defendant

Trenton J. Reichling
Assistant United States Attorney

Douglas Molloy
Attorney for Defendant

Jesus M. Casas
Assistant United States Attorney
Chief, Fort Myers Division

Defendant's Initials BL